IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRED B. GAMES, MARY V. GAMES
and VALLIE J. WEST,

    Plaintiffs,

v.                                           Civil Action No. 5:17CV101
                                                                     (STAMP)
CHESAPEAKE APPALACHIA, LLC and
SWN PRODUCTION COMPANY, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT CHESAPEAKE APPALACHIA LLC'S
MOTION TO DISMISS AMENDED COMPLAINT**

I.   Background

The defendants, Chesapeake Appalachia, LLC ("Chesapeake") and SWN Production, LLC ("SWN"), removed this civil action to this Court from the Circuit Court of Marshall County, West Virginia. The plaintiffs, Fred B. Games, Mary V. Games, and Vallie J. West, then amended their complaint. The plaintiffs' amended complaint alleges that plaintiffs Fred and Mary Games, along with James Riley West and Phyllis J. West, entered into oil and gas leases with Chesapeake on December 5, 2008. Both couples signed separate, identical leases, but both leases covered the same property, which, at the time, the four individuals jointly owned. After the couple signed the leases, the Wests' son, plaintiff Vallie J. West, inherited his parents' interest in the property. SWN acquired all of Chesapeake's interests in the alleged December 5, 2008 leases

through one or more assignments and/or purchase agreements entered into between Chesapeake and SWN.

The plaintiffs seek a declaration that the December 5, 2008 leases expired at the end of the primary term and that the leases have not been extended into any alleged secondary terms by any "Delay in Marketing" payments the defendants have attempted to make. Specifically, the plaintiffs allege that the "Delay in Marketing" clause requires that a well must be located on the leasehold or lands pooled with the leasehold that is "capable of production" and that there were no such wells at the time the primary term of the leases expired. The plaintiffs also allege that the defendants "violated their duties and implied covenants to market oil and gas by not reasonably making efforts to market oil and gas pursuant to the terms of the lease agreements which are the subject of this matter" and "violated their duties of good faith and their duties to act as reasonably prudent oil and gas operators when they attempted to extend the subject oil and gas leases through the payment of 'Delay in Marketing' payments when there were no oil and gas wells which were capable of production." ECF No. 9 at 4. The plaintiffs also ask for punitive damages.

Chesapeake has filed a motion to dismiss the plaintiffs' amended complaint against it. Chesapeake first argues that the claim for declaratory judgment should be dismissed as to Chesapeake because Chesapeake has no interest in the leases, which have been

2

assigned to SWN.  Chesapeake argues that this case is analogous to Dwyer v. Range Res.-Appalachia, No. 5:14CV21, 2014 WL 1648272 (N.D. W. Va. Apr. 24, 2014), where this Court found that a lessee that assigned its interest in a lease was not sufficiently interested in a declaratory judgment claim regarding the continuing validity of that lease.  Next, Chesapeake argues that the plaintiffs' claims related to the implied duty to market and the implied covenant of good faith and fair dealing are not pled with sufficient specificity to enable Chesapeake to respond.  Lastly, Chesapeake argues that the plaintiffs' claim for punitive damages should be dismissed because it is a stand-alone claim and is without merit.

The plaintiffs filed a response to Chesapeake's motion.  In response, the plaintiffs argue that Chesapeake ignores parts of the amended complaint that clearly allege that Chesapeake "owed duties and covenants to the Plaintiffs and that Defendant Chesapeake violated those duties through its actions in improperly attempting to extend its leasehold with the Plaintiffs and, thereby, have caused the Plaintiffs damage including a cloud on title of the Plaintiffs' oil and gas interests."  ECF No. 18 at 2.  The plaintiffs concede that it may be improper to include Chesapeake in an action seeking only declaratory relief, but that, in this civil action, the plaintiffs also properly assert both contractual and tort claims against Chesapeake.  The plaintiffs contend that they alleged in their complaint that Chesapeake's actions have resulted

3

in damages and have "created a cloud upon the title to the Plaintiffs' oil and gas rights, which are the subject of this action." ECF No. 18 at 5. Thus, the plaintiffs conclude that their amended complaint seeks much more than declaratory relief regarding the lease agreement. The plaintiffs further argue that the Dwyer case cited by Chesapeake did not assert the type of allegations related to the breach of duties and obligations that are alleged in this case.

Chesapeake filed a reply to the plaintiffs' response in opposition. In reply, Chesapeake points out the plaintiffs' acknowledgment that Chesapeake no longer has an interest in the leases. Thus, Chesapeake argues that, as it has not had an interest in the leases for more than two years, the plaintiffs "cannot properly raise either a declaratory judgment or a tort claim against Chesapeake." ECF No. 21 at 1. Chesapeake also contends that no breach of contract claim is pled in the amended complaint. The plaintiffs allege that Chesapeake violated the "duty to market" and the "duty of good faith and fair dealing." However, Chesapeake argues that "West Virginia law does not recognize an independent cause of action for a breach of duty of good faith and fair dealing separate and apart from a breach of contract claim." ECF No. 21 at 2. Next, Chesapeake argues that the plaintiffs cannot state a plausible claim for breach of an implied duty to market because Chesapeake's actions were expressly

4

authorized under the leases.  Lastly, Chesapeake points out that, while the plaintiffs' response speaks of tort recovery, the amended complaint does not plead any tort claim.

For the following reasons, the motion to dismiss the amended complaint must be granted as to Chesapeake.

## II. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which

goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Discussion

The plaintiffs concede in their response to Chesapeake's motion to dismiss that Chesapeake assigned the leases to SWN. ECF No. 18 at 2-3 ("The Plaintiffs do not dispute that it may be the case that a defendant such as Chesapeake may not be properly included in an action seeking mere declaratory relief."). This

Court finds that the transfer of title to SWN is fatal to the plaintiffs' suit to quiet title against Chesapeake. In order to assert a declaratory judgment action against a defendant, the defendant must be sufficiently interested in the subject matter of the action. 28 U.S.C. § 2201(a). In Dwyer, this Court ruled that a lessee that assigned its interest in an oil and gas lease to another party was not sufficiently interested in a declaratory judgment claim regarding the continuing validity of that lease. Dwyer, 2014 WL 1648272, at *3 (finding that the defendant would not be affected by the declaratory judgment claim because it "no longer has an interest in the leases due to its assignment of such interest to [another party]"). Because Chesapeake does not have an interest in the leases, the declaratory judgment claim against Chesapeake does not satisfy the "case of actual controversy" requirement of the Declaratory Judgment Act. 28 U.S.C. § 2201(a); see MedImmune v. Genentech, Inc., 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III.").

The plaintiffs attempt to circumvent this Court's finding in Dwyer. In their response, the plaintiffs state in a footnote to the sentence conceding that Chesapeake assigned its interest to SWN that "[t]he Plaintiffs do not know, however, whether or not Defendant Chesapeake may have retained any overriding royalty

7

interests related to the leases which were the subject of the assignment." ECF No. 18 at 3 n.1. However, this allegation was not pled in the plaintiffs' amended complaint and is raised for the first time in the response to the motion to dismiss. Furthermore, with the exception of this footnote, the plaintiffs otherwise admit that SWN acquired all of Chesapeake's interest in the leases. There is no other allegation that the assignment from Chesapeake to SWN contained any reservations, such as Chesapeake retaining any overriding royalty interests. Furthermore, in the amended complaint, the plaintiffs state that "Defendant SWN Production Company acquired all of Defendant Chesapeake's interests in the alleged December 5, 2008 lease agreements through one or more assignment and/or purchase agreements entered into between Defendant Chesapeake and Defendant SWN." ECF No. 9 at 2 (emphasis added). A portion of the assignment is attached to Chesapeake's reply as Exhibit A, from which there is no indication that Chesapeake retained any overriding royalty interests. ECF No. 21-1.

Additionally, even if Chesapeake had not assigned its interest in the leases to SWN, the plaintiffs nonetheless fail to set forth the required elements for a suit to quiet title. The Supreme Court of Appeals of West Virginia has held as follows:

> In a suit to quiet title to land, the plaintiff should, as a general rule, show three things: (1) That plaintiff has a valid legal and equitable title to the premises; (2) that he has actual possession thereof; (3) that the

>     defendant lays some claim thereto, stating the nature
>     thereof, so far as it is within plaintiff's knowledge.

Hyman v. Swint, 119 S.E. 866, 867 (W. Va. 1923). Here, the plaintiffs have not asserted factual allegations in support of any of these three required elements of a suit to quiet title. Thus, under Twombly, the plaintiffs are not entitled to declaratory judgment "quieting title and stating that the alleged leases signed on December 5, 2008 are no longer valid." ECF No. 9 at 4.

At most, the factual allegations in the amended complaint could arguably give rise to a slander of title claim. The elements of slander of title are as follows: "(1) publication of (2) a false statement (3) derogatory to plaintiff's title (4) with malice (5) causing special damages (6) as a result of diminished value in the eyes of third parties." TXO Prod. Corp. v. All. Res. Corp., 419 S.E.2d 870, 879 (W. Va. 1992). However, the plaintiffs do not plead a claim for slander of title in the amended complaint. Additionally, the plaintiffs cannot plead a claim for slander of title because Chesapeake has not held the leases since July 1, 2014, as evidenced by the Assignment, Bill of Sale and Conveyance attached to Chesapeake's reply. ECF No. 21-1. Thus, any tort claim, including a claim for slander of title, would be barred by the two-year statute of limitations applicable to that claim. See W. Va. Code § 55-2-12 ("Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if

it be for damage to property . . . ."); Holmes v. Chesapeake Appalachia, LLC, No. 5:11CV123, 2012 WL 3647674, at *7 (N.D. W. Va. Aug. 23, 2012) ("[T]his Court believes that, if faced with the question, the West Virginia high court would hold that slander of title is governed by the two-year statute of limitations under § 55-2-12 . . . .").

Furthermore, in their amended complaint, the plaintiffs do not sufficiently plead any other claim besides the claim for declaratory judgment. Any attempt by the plaintiff to assert a claim under an implied covenant of good faith and fair dealing or implied duty to market is barred by Twombly because the factual allegations are insufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In the amended complaint, the plaintiffs generally state that the defendants "violated their duties and implied covenants to market oil and gas by not reasonably making efforts to market oil and gas pursuant to the terms of the lease agreements which are the subject of this matter" and "violated their duties of good faith and their duties to act as reasonably prudent oil and gas operators when they attempted to extend the subject oil and gas leases through the payment of 'Delay in Marketing' payments when there were no oil and gas wells which were capable of production." ECF No. 9 at 4. Thus, the Court finds that the plaintiffs vaguely refer to claims under an implied covenant of good faith and fair dealing and an

implied duty to market without stating the basis for, or setting forth the elements of, those claims.

And, as Chesapeake points out, West Virginia law does not recognize an independent cause of action for a breach of duty of good faith and fair dealing "separate and apart from a breach of contract claim." Stand Energy Corp. v. Columbia Gas Transmission Corp., 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005). Thus, even if a claim under an implied covenant of good faith and fair dealing was sufficiently pled to raise a right to relief above the speculative level, the claim nonetheless fails because the plaintiffs do not plead any breach of contract claim in their amended complaint.

Chesapeake is also correct that the implied duty to market claim would likewise fail even if sufficiently pled under Twombly because there is an express provision in the leases regarding any delay in marketing. The plaintiffs admit in the amended complaint that Chesapeake tendered to the plaintiffs the delay in marketing payments as required by the express "delay in marketing" provision in the leases. ECF No. 9 at 3. This Court cannot find that Chesapeake breached an implied duty to market when there is an express provision as to the duty to market in the parties' agreement, which Chesapeake satisfied. See Barn-Chestnut, Inc. v. CFM Dev. Corp., 457 S.E.2d 502, 509 (W. Va. 1995) ("[W]here the express intention of contracting parties is clear, a contrary

11

intent will not be created by implication. The implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." (quoting Bonanza Int'l, Inc. v. Rest. Mgmt. Consultants, Inc., 625 F. Supp. 1431, 1448 (E.D. La. 1986))).

Lastly, this Court must deny as moot the claim for punitive damages because the plaintiffs have not pled an actionable declaratory judgment or tort claim against Chesapeake. The plaintiffs cannot plead punitive damages as a stand-alone claim. See Kerns v. Range Res.-Appalachia, LLC, No. 1:10CV23, 2011 WL 197908, at *7 (N.D. W. Va. Jan. 18, 2011) ("[I]n light of the fact that all of the plaintiffs' substantive claims fail as a matter of law, it follows that their claim for punitive damages also fails because punitive damages are a form of relief rather than an independent claim."). And, even if the Court had found that there was any breach of an implied covenant of fair dealing or an implied duty to market, punitive damages are not an available remedy in an action for breach of contract. See Warden v. Bank of Mingo, 341 S.E.2d 679, 684 (W. Va. 1985) ("[P]unitive damages are generally unavailable in pure contract actions."); Berry v. Nationwide Mut. Fire Ins. Co., 381 S.E.2d 367, 374 (W. Va. 1989) ("Generally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract.").

## IV. Conclusion

For the reasons set forth above, Chesapeake Appalachia, LLC's motion to dismiss the amended complaint (ECF No. 12) is GRANTED as to defendant Chesapeake Appalachia, LLC.  This action continues as to defendant SWN.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    November 13, 2017

>                             /s/ Frederick P. Stamp, Jr.
>                             FREDERICK P. STAMP, JR.
>                             UNITED STATES DISTRICT JUDGE