IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRED B. GAMES, MARY V. GAMES
and VALLIE J. WEST,

    Plaintiffs,

v.                                                    Civil Action No. 5:17CV101
                                                                           (STAMP)
CHESAPEAKE APPALACHIA, LLC and
SWN PRODUCTION COMPANY, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT SWN PRODUCTION COMPANY, LLC'S
MOTION FOR SUMMARY JUDGMENT**

I.   Background

The defendants, Chesapeake Appalachia, LLC ("Chesapeake") and SWN Production, LLC ("SWN"), removed this civil action to this Court from the Circuit Court of Marshall County, West Virginia. The plaintiffs, Fred B. Games, Mary V. Games, and Vallie J. West, then amended their complaint. The plaintiffs' amended complaint alleges that plaintiffs Fred and Mary Games, along with James Riley West and Phyllis J. West, entered into oil and gas leases with Chesapeake on December 5, 2008. Both couples signed separate, identical leases, but both leases covered the same property, which, at the time, the four individuals jointly owned. After the couple signed the leases, the Wests' son, plaintiff Vallie J. West, inherited his parents' interest in the property. SWN acquired all of Chesapeake's interests in the alleged December 5, 2008 leases

through one or more assignments and/or purchase agreements entered into between Chesapeake and SWN.

The plaintiffs seek a declaration that the December 5, 2008 leases expired at the end of the primary term and that the leases have not been extended into any alleged secondary terms by any "Delay in Marketing" payments the defendants have attempted to make. Specifically, the plaintiffs allege that the "Delay in Marketing" clause requires that a well must be located on the leasehold or lands pooled with the leasehold that is "capable of production" and that there were no such wells at the time the primary term of the leases expired. The plaintiffs also allege that the defendants "violated their duties and implied covenants to market oil and gas by not reasonably making efforts to market oil and gas pursuant to the terms of the lease agreements which are the subject of this matter" and "violated their duties of good faith and their duties to act as reasonably prudent oil and gas operators when they attempted to extend the subject oil and gas leases through the payment of 'Delay in Marketing' payments when there were no oil and gas wells which were capable of production." ECF No. 9 at 4. The plaintiffs also ask for punitive damages.

Chesapeake filed a motion to dismiss the plaintiffs' amended complaint, in which Chesapeake argued that the claim for declaratory judgment should be dismissed as to Chesapeake because Chesapeake has no interest in the leases, which have been assigned

to SWN. This Court granted Chesapeake's motion to dismiss, finding that "the transfer of title to SWN is fatal to the plaintiffs' suit to quiet title against Chesapeake." ECF No. 25 at 7. Thus, SWN is the only remaining defendant in this civil action.

SWN has now filed a motion for summary judgment. SWN argues that the record is devoid of any evidence supporting the plaintiffs' claims for a declaratory judgment, breach of duty of good faith and fair dealing, breach of the implied covenant to market, emotional distress, and request for punitive damages against SWN. Rather, SWN argues that discovery has established that the leases were extended beyond the primary term as a result of (a) the operations on the leasehold and/or the lands pooled therewith or (b) the "Delay in Marketing" payments tendered to the plaintiffs.

SWN's motion for summary judgment is now fully briefed and ripe for review. For the reasons set forth below, SWN's motion for summary judgment is granted.

## II. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute,

> or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the

law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Discussion

#### A. Extension of Leases into Secondary Term and Pooling with Adjoining Tracts

This Court first finds that the leases are in their secondary term and were properly pooled with other adjoining tracts. Specifically, the operations of Chesapeake and SWN extended the leases beyond their primary term, pursuant to the express provisions of the leases. See Cabot Oil & Gas Corp. v. Huffman, 705 S.E.2d 806, 814 (W. Va. 2010) ("When the language used in a contract is plain and unambiguous, courts are required to apply, not construe, the contract."). The leases were effective for an

5

initial term of five years beginning on December 5, 2008, and the lease term provision provided that the leases

> shall continue beyond the primary term as to the entirety of the Leasehold <u>if any of the following is satisfied</u>: (i) operations are conducted on the Leasehold or lands pooled/unitized therewith in search of oil, gas, or their constituents, <u>or</u> (ii) a well deemed by Lessee to be capable of production is located on the Leasehold or lands pooled/unitized therewith, <u>or</u> (iii) oil or gas, or their constituents, are produced from the Leasehold or lands pooled/unitized therewith, <u>or</u> (iv) if the Leasehold or lands pooled/unitized therewith is used for the underground storage of gas, or for the protection of stored gas, <u>or</u> (v) if prescribed payments are made . . . .

ECF No. 31-1 at 2 (emphasis added).

The leases also provide that "Lessor grants Lessee the right to pool, unitize, or combine all or parts of the Leasehold with other lands, whether contiguous or not contiguous . . . ." ECF No. 31-1 at 3. Furthermore, the leases provide that each lease "shall be construed against termination, forfeiture, cancellation or expiration and in favor of giving effect to the continuation of this Lease where the circumstances exist to maintain this Lease in effect under any of the alternative mechanisms set forth above." ECF No. 31-1 at 2.

As a preliminary matter, this Court notes that the leases were properly pooled with adjoining tracts. The affidavit of Desiree Lynch ("Ms. Lynch"), the Staff Landman for SWN, explains that "[t]he leases which are the subject of the Complaint have been pooled and unitized by SWN into what is called the David Reinbeau

North Unit," and that "[t]he David Reinbeau MSH 5H well is within the David Reinbeau North Unit." ECF No. 31-10 at 3. The relevant Declaration and Notice of Pooled Unit was effective on June 12, 2013, and recorded on August 30, 2013. ECF No. 31-2. Thus, the property at issue was properly pooled in the David Reinbeau North Unit before the expiration of the leases' primary term. The plaintiffs' argument that they did not receive direct notice of the pooling of their property is of no consequence in this matter. See Berghoff v. Chesapeake Appalachia, LLC et al, No. 5:15CV126, slip op. at 7 (N.D. W. Va. Feb. 15, 2017) (finding that the plaintiffs were on constructive notice of the existence of a Declaration of Pooling Unit because it was timely recorded).

Conducting operations on the land is the first of the alternative methods provided in the leases for extending the leases. The leases provide that

> the Lessee shall be deemed to be conducting operations in search of oil or gas, or their constituents, if the Lessee is engaged in geophysical and other exploratory work including, but not limited to, activities to drill an initial well, to drill a new well, or to rework, stimulate, deepen, sidetrack, frac, plug back in the same or different formation or repair a well or equipment on the Leasehold or any lands pooled/unitized therewith (such activities shall include, but not be limited to, performing any preliminary or preparatory work necessary for drilling, conducting internal technical analysis to initiate and/or further develop a well, obtaining permits and approvals associated therewith and may include reasonable gaps in activities provided that there is a continuum of activities showing a good faith effort to develop a well or that the cessation or interruption of activities was beyond the control of Lessee, including interruptions caused by the acts of third parties over

7

> whom Lessee has no control or regulatory delays associated with any approval process required for conducting such activities).

ECF No. 31-1 at 2.

This Court has previously held that such a lease "may be extended 'no matter how slight may have been the commencement of an portion of the work which was a necessary and indispensable part of the work required.'" Braden v. Chesapeake Appalachia, Inc., No. 5:13CV107, 2014 WL 6633231, at *6 (N.D. W. Va. Nov. 21, 2014), aff'd sub nom., Braden v. Chesapeake Appalachia, LLC, 610 F. App'x 331 (4th Cir. 2015) (citing Fleming Oil & Gas Co. v. South Penn Oil Co., 17 S.E. 203 (W. Va. 1893)). "[T]he West Virginia Supreme Court [has] held that preparatory activities [are] sufficient to carry a lease into a new term even though a well [has] not been drilled on the property in question." Id.

In Braden, this Court held that the defendant's activities were sufficient to extend the lease into a new term even where drilling has not yet commenced. Here, drilling of the David Reinbeau MSH 5H well has been completed, and, thus, it is especially clear that SWN's operations were sufficient to extend the leases into the secondary term. Before the conclusion of the leases' primary term, Chesapeake pooled and surveyed the property at issue (ECF No. 31-2), and then submitted a Well Work Permit application for the David Reinbeau MSH 5H well that was approved before the termination of the leases' primary term (ECF No. 31-5).

8

SWN also commenced and completed drilling on the David Reinbeau MSH 5H well before the expiration of the leases' primary term. ECF No. 31-7.

Additionally, the David Reinbeau MSH 5H well is capable of production. The leases expressly provide that the second alternative method for extending the leases beyond the primary term is when the lessee deems a well located on the leasehold to be capable of production. ECF No. 31-1 at 2. Under the terms of the leases, "a well shall be deemed to be capable of production if it has the capacity to produce a profit over operating costs, without regard to any capital costs to drill or equip the well, or to deliver the oil or gas to market." ECF No. 31-1 at 2. Ms. Lynch's affidavit establishes that the David Reinbeau MSH 5H well has been capable of production since drilling was completed, and was still capable of production as of February 12, 2018, the date the affidavit was taken, "in volumes that would make the well economically advantageous for both SWN and the royalty owners." ECF No. 31-10 at 5.

Furthermore, the plaintiffs have not produced any evidence supporting their allegation that there was no oil or gas well within the Davis Reinbeau North Unit that was capable of producing oil or gas before the expiration of the primary term of the leases. On November 27, 2017, the plaintiffs supplied the following answer

9

to the following interrogatory regarding the capable of production issue:

> INTERROGATORY NO. 25: Please identify any and all geologic, reserve study, well analysis or other analysis conducted regarding the capability of any wells on the David Reinbeau North Unit to produce gas including, but not limited to, those performed by or on the Plaintiffs' behalf.
>
> ANSWER: The Plaintiffs are not currently in possession of any such studies that they can identify.

ECF No. 31-11 at 5. In another interrogatory, the plaintiffs also stated that they have not identified any expert witnesses who might testify at the trial of this matter. ECF No. 31-11 at 3.

This Court also finds that, even if the operations on the property at issue were not sufficient to extend the leases beyond their primary term, the leases were extended by SWN and Chesapeake's tender of the prescribed "Delay in Marketing" payments to the plaintiffs, which is a third alternative method for extending the leases. ECF No. 31-1 at 1. Ms. Lynch's affidavit establishes that "Chesapeake Appalachia, L.L.C. and, subsequently, SWN Production Company, LLC, remitted Delay in Marketing payments to Plaintiffs for the well in the David Reinbeau North Unit for the following periods: 2013-2014, 2014-2015, 2015-2016, and 2016-2017." ECF No. 31-10 at 5. The plaintiffs also acknowledged receiving the Delay in Marketing payments in an answer to an interrogatory. ECF No. 31-11 at 6.

10

The plaintiffs argue that the Delay in Marketing payments failed to extend the lease because they were not made in advance of the expiration of the leases' primary term. However, the leases provide that the "Lessee shall pay <u>after the primary term</u> and until such time as marketing is established (or Lessee surrenders the Lease) a Delay in Marketing payment." ECF No. 31-1 at 3 (emphasis added). Accordingly, this Court concludes that the leases were properly pooled with adjoining tracts and extended into secondary terms by any one of three alternative mechanisms.

B. <u>Claims for Violations of the Implied Covenant to Market and Act in Good Faith</u>

Next, this Court finds that the plaintiffs cannot establish any evidence to support their claims of violations of the implied covenant to market and act in good faith. The plaintiffs' claim for breach of the implied duty to act in good faith fails as a matter of law because the complaint does not allege a breach of an express provision of the leases. In West Virginia, "a claim for breach of the implied covenant of good faith and fair dealing can only survive if the [plaintiff] pleads an express breach of contract claim." <u>Wittenberg v. Wells Fargo Bank, N.A.</u>, 852 F. Supp. 2d 731, 750 (N.D. W. Va. 2012), <u>aff'd sub nom.</u>, <u>Wittenberg v. First Indep. Mortg. Co.</u>, 599 F. App'x 463 (4th Cir. 2013); <u>see also</u> <u>Highmark W. Virginia, Inc. v. Jamie</u>, 655 S.E.2d 509, 514 (W. Va. 2007) ("[A]n implied covenant of good faith and fair dealing does

not provide a cause of action apart from a breach of contract claim.").

Furthermore, there is no issue of material fact regarding the plaintiffs' claims for breach of the implied covenant to market because the plaintiffs have not produced any factual or evidentiary support for their allegation that SWN failed to act as an ordinary prudent operator. "The [implied covenant to market] requires that the lessee exercise reasonable diligence to market the products, defined as 'whatever, in the circumstances, would be reasonably expected of all operators of ordinary prudence, having regard to the interests of both lessor and lessee.'" Leggett v. EQT Prod. Co.,800 S.E.2d 850, 859, cert. denied, 138 S. Ct. 472 (2017) (citing Rogers v. Westerman Farm Co., 29 P.3d 887, 903 (Colo. 2001)).

Ms. Lynch's affidavit establishes that SWN acted as an ordinary prudent operator in its attempt to market the minerals at issue. ECF No. 31-10. Ms. Lynch states that "operations for completion of the David Reinbeau MSH 5H well commenced on December 5, 2013, in accordance with the leases, and were ongoing until completed on January 26, 2014." ECF No. 31-10 at 3. Ms. Lynch further states that the well has been capable of production since it was completed and that, from the time SWN purchased the well from Chesapeake in December 2014 until the present, "SWN has engaged in efforts to build or contract for the building of

infrastructure and pipelines so that the Davis Reinbeau MSH 5H well could be placed into production." ECF No. 31-10 at 3-4. "Those efforts included, but were not limited to, negotiating with a pipeline gathering company for the construction of a gathering pipeline from the well to trunk lines operated by third parties in the area." ECF No. 31-10 at 4.

Additionally, the affidavit states that "[t]he David Reinbeau MSH 5H required additional compression to be placed into production as part of an interconnected gathering system." ECF No. 31-10 at 4. Ms. Lynch explains that, accordingly, "SWN submitted documentation necessary to obtain a permit for the implementation of additional compression to the [West Virginia Department of Environmental Protection] and received notice on February 9, 2018, that the permit was approved." ECF No. 31-10 at 4. Ms. Lynch signed the affidavit on February 12, 2018, and, at that time, represented that "[i]nstallation of the compression is expected to be complete in approximately two weeks" and "it is anticipated and the first sale will occur on or around February 13, 2018," before the compression facilities are fully operational. ECF No. 31-10 at 4.

Lastly, Ms. Lynch states that "[g]eologic and well analysis indicate that the Davis Reinbeau MSH 5H well has been and remains capable of production in volumes that would make the well economically advantageous for both SWN and the royalty owners."

13

ECF No. 31-10 at 5.  Based on Ms. Lynch's representations in the affidavit, this Court finds that SWN has exercised reasonable diligence to market the minerals at issue.  Specifically, this Court finds that SWN has done what would be reasonably expected of all operators of ordinary prudence and, in doing so, that SWN has had regard for the interests of both the lessor and lessee.  Thus, the plaintiffs' claims for breach of the implied covenant to market must fail.

C.  <u>Claims for Emotional Distress and Punitive Damages</u>

Lastly, this Court finds that the plaintiffs cannot recover for emotional distress and punitive damages against SWN.  The plaintiffs also concede in their response in opposition to SWN's motion for summary judgment that they cannot satisfy a claim for emotion distress or punitive damages.  In West Virginia, a plaintiff must allege that some personal injury was incurred in order to maintain an action for mental or emotional distress, and damage to property alone is not sufficient for such damages. <u>See Jarrett v. E.L. Harper & Son, Inc.</u>, 235 S.E.2d 362 (W. Va. 1977) (holding that the plaintiffs could not recover for mental pain and suffering where they sought recovery for loss of use of their property), holding modified on other grounds by <u>Brooks v. City of Huntington</u>, 768 S.E.2d 97 (W. Va. 2014). Here, the plaintiffs have not alleged any personal injury and thus cannot recover for emotional distress.

Furthermore, the plaintiffs' claim for punitive damages is not viable under West Virginia law because the plaintiffs' allegations are that SWN assumed Chesapeake's interest in the leases, failed to inform them of SWN's acquisition of the leases, failed to negotiate leases for the property at issue, and continued to remit "Delay in Marketing" payments. To recover punitive damages in West Virginia, a plaintiff must prove by a preponderance of the evidence "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others." <u>Vandevender v. Sheetz, Inc.</u>, 490 S.E.2d 678, 682 (W. Va. 1997). The plaintiffs have not alleged any evidence supporting a claim for punitive damages. Thus, the plaintiffs' claim for punitive damages also fails, as the plaintiffs concede.

## IV. <u>Conclusion</u>

For the reasons set forth above, SWN's motion for summary judgment (ECF No. 31) is GRANTED. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:     July 16, 2018

                                /s/ Frederick P. Stamp, Jr.
                                FREDERICK P. STAMP, JR.
                                UNITED STATES DISTRICT JUDGE